UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>c/o Department of Justice<br>Washington, D.C. 20530,<br><br>*Plaintiff,*<br><br>v.<br><br>MITCHELL P. RALES<br>2200 Pennsylvania Ave., N.W., Suite 800W<br>Washington, D.C. 20037<br><br>*Defendant.* | Civil Action No. |

COMPLAINT FOR CIVIL PENALTIES FOR FAILURE TO COMPLY
WITH THE PREMERGER REPORTING AND WAITING REQUIREMENTS
OF THE HART-SCOTT RODINO ACT

The United States of America, Plaintiff, by its attorneys, acting under the direction of the

Attorney General of the United States and at the request of the Federal Trade Commission,

brings this civil antitrust action to obtain monetary relief in the form of civil penalties against

Defendant Mitchell P. Rales ("Rales"). Plaintiff alleges as follows:

NATURE OF THE ACTION

1.     Rales violated the notice and waiting period requirements of the Hart-Scott

-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a ("HSR Act" or "Act"), with

respect to the acquisitions of voting securities of Colfax Corporation ("Colfax") and Danaher

Corporation ("Danaher").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 7A(g) of the Clayton Act, 15 U.S.C. § 18a(g), and pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and over the Defendant by virtue of Defendant's consent, in the Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in this District.

3.      Venue is properly based in this District by virtue of Defendant's principal office and place of business and Defendant's consent, in the Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in this District.

## THE DEFENDANT

4.      Defendant Rales is a natural person with his principal office and place of business at 2200 Pennsylvania Avenue, N.W., Suite 800W, Washington, D.C. 20037.  Rales is engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. §18a(a)(1).  At all times relevant to this complaint, Rales had sales or assets in excess of $15.6 million.

## OTHER ENTITIES

5.      Colfax is a corporation organized under the laws of Delaware with its principal place of business at 420 National Business Parkway, 5th Floor, Annapolis Junction, MD 20701. Colfax is engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. §18a(a)(1).  At all times relevant to this complaint, Colfax had sales or assets in excess of $156.3 million.

2

6.      Danaher is a corporation organized under the laws of Delaware with its principal place of business at 2200 Pennsylvania Avenue, N.W., Suite 800W, Washington, D.C. 20037. Danaher is engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. §18a(a)(1).   At all times relevant to this complaint, Danaher had sales or assets in excess of $156.3 million.

<u>THE HART-SCOTT-RODINO ACT AND RULES</u>

7.      The HSR Act requires certain acquiring persons and certain persons whose voting securities or assets are acquired to file notifications with the federal antitrust agencies and to observe a waiting period before consummating certain acquisitions of voting securities or assets. 15 U.S.C. § 18a(a) and (b).   These notification and waiting period requirements apply to acquisitions that meet the HSR Act's thresholds.   As of February 1, 2001, the size of transaction threshold was $50 million.   In addition, there is a separate filing requirement for transactions in which the acquirer will hold voting securities in excess of $100 million, and for transactions in which the acquirer will hold voting securities in excess of $500 million.   One person involved in the transaction had to have sales or assets in excess of $10 million, and the other person had to have sales or assets in excess of $100 million.   Since 2004, the size of transaction and size of person thresholds have been adjusted annually.

8.      The HSR Act's notification and waiting period requirements are intended to give the federal antitrust agencies prior notice of, and information about, proposed transactions.   The waiting period is also intended to provide the federal antitrust agencies with an opportunity to

3

investigate a proposed transaction and to successfully seek an injunction to prevent the consummation of a transaction that may violate the antitrust laws.

9.      Pursuant to Section (d)(2) of the HSR Act, 15 U.S.C. § 18a(d)(2), rules were promulgated to carry out the purposes of the HSR Act (the "HSR Rules"). *See* 16 C.F.R. §§ 801-03. The HSR Rules, among other things, define terms contained in the HSR Act.

10.     Pursuant to section 801.1(c)(2) of the HSR Rules, 16 C.F.R. § 801.1(c)(2), the holdings of spouses and their minor children are considered holdings of each of them.

11.     Pursuant to section 801.13(a)(1) of the HSR Rules, 16 C.F.R. § 801.13(a)(1), "all voting securities of [an] issuer which will be held by the acquiring person after the consummation of an acquisition" – including any held before the acquisition – are deemed held "as a result of" the acquisition at issue.

12.     Pursuant to sections 801.13(a)(2) and 801.10(c)(1) of the HSR Rules, 16 C.F.R. § 801.13(a)(2) and § 801.10(c)(1), the value of voting securities already held is the market price, defined to be the lowest closing price within 45 days prior to the subsequent acquisition.

13.     Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), provides that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the HSR Act is liable to the United States for a civil penalty for each day during which such person is in violation. From November 20, 1996, through February 9, 2009, the maximum amount of civil penalty was $11,000 per day, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996). As of February 10, 2009, the maximum amount of civil

penalty was increased to $16,000 per day, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 74 Fed. Reg. 857 (Jan. 9, 2009). Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 81 Fed. Reg. 42,476 (June 30, 2016), the maximum amount of civil penalty was increased to $40,000 per day.

<u>DEFENDANT'S PRIOR VIOLATION OF THE HSR ACT</u>

14.     On May 18, 1988, Equity Group Holdings ("Equity Group") acquired sufficient voting securities of Interco Incorporated ("Interco") so that its holdings exceeded the $15 million threshold then in effect under the HSR Act. Equity Group continued to acquire Interco voting securities through July 27, 1988. At that time, Rales was an "ultimate parent entity" of Equity Group within the meaning of the HSR Rules and controlled Equity Group for purposes of the HSR Act. *See* 16 C.F.R. § 801.1(a)(3). Accordingly, Equity Group's violations of the HSR Act are attributed to Rales.

15.     Although it was required to do so, Equity Group did not file under the HSR Act prior to acquiring Interco voting securities on May 18, 1988.

16.     On January 25, 1991, the United States filed a complaint for civil penalties alleging that Equity Group's acquisitions of Interco voting securities violated the HSR Act. At the same time, the United States filed a Stipulation signed by Equity Group and a proposed Final

5

Judgment that would require Equity Group to pay a civil penalty of $850,000. The Final

Judgment was entered by the court on January 30, 1991.

DEFENDANT'S VIOLATIONS OF THE HSR ACT

**A. Failure to File HSR Act Notifications in Connection with Acquisitions of Colfax Voting Securities**

17.     Prior to May 7, 2008, Rales held approximately 57.9% of the voting securities of

Colfax.  Under the HSR Rules, because Rales held 50% or more of the voting securities of

Colfax, any acquisitions he made of Colfax voting securities were exempt from the requirements

of the HSR Act.  *See* 16 C.F.R. § 802.30.

18.     On May 7, 2008, Colfax made an Initial Public Offering of voting securities.  As a

result of the Initial Public Offering, Rales's holdings in Colfax decreased to approximately

20.8%.  Because Rales no longer held over 50% of the voting securities of Colfax, Rales's

subsequent acquisitions of Colfax voting securities were not exempt from the requirements of the

HSR Act.

19.     On October 31, 2011, Rales's wife acquired 25,000 shares of voting securities of

Colfax on the open market.  Pursuant to the HSR Rules, this acquisition was attributed to Rales.

*See* 16 C.F.R. § 801.1(c)(2).  As a result of this acquisition, Rales held voting securities of

Colfax valued in excess of the $100 million threshold, as adjusted ($131.9 million).

20.     Although he was required to do so, Rales did not file under the HSR Act prior to

acquiring Colfax voting securities on October 31, 2011.

21.     Rales continued to acquire voting securities of Colfax through August 5, 2015,

but did not exceed the next highest HSR filing threshold.

6

22.     On February 25, 2016, Rales made a corrective filing under the HSR Act for the 2011 acquisition of Colfax voting securities.  The waiting period on the corrective filing expired on March 28, 2016.

28.     Rales was in continuous violation of the HSR Act from October 31, 2011, when he acquired the Colfax voting securities valued in excess of the HSR Act's $100 million size-of-transaction threshold, as adjusted ($131.9 million), through March 28, 2016, when the waiting period expired.

**B.   Failure to File HSR Act Notifications in Connection with Acquisitions of Danaher Voting Securities**

29.     On January 31, 2008, Rales acquired 6,000 shares of voting securities of Danaher on the open market.  As a result of this transaction, Rales held voting securities of Danaher valued at approximately $2.3 billion, in excess of the HSR Act's $500 million size-of-transaction threshold, as adjusted ($597.9 million).

30.     Although he was required to do so, Rales did not file under the HSR Act prior to acquiring Danaher voting securities on January 31, 2008.

31.     On February 25, 2016, Rales made a corrective filing under the HSR Act for the acquisition of Danaher voting securities.  The waiting period on the corrective filing expired on March 28, 2016.

32.     Rales was in continuous violation of the HSR Act from January 31, 2008, when he acquired the Danaher voting securities valued in excess of the HSR Act's $500 million size-of-transaction threshold, as adjusted ($597.9 million), through March 28, 2016, when the waiting period expired.

REQUESTED RELIEF

WHEREFORE, Plaintiff requests:

7

      a.     That the Court adjudge and decree that Defendant Rales's acquisition of Colfax voting securities on October 31, 2011, was a violation of the HSR Act, 15 U.S.C. § 18a; and that Defendant Rales was in violation of the HSR Act each day from October 31, 2011, through March 28, 2016;

      b.     That the Court adjudge and decree that Defendant Rales's acquisition of Danaher voting securities on January 31, 2008, was a violation of the HSR Act, 15 U.S.C. § 18a; and that Defendant Rales was in violation of the HSR Act each day from January 31, 2008, through March 28, 2016;

      c.     That the Court order Defendant Rales to pay to the United States an appropriate civil penalty as provided by the HSR Act. 15 U.S.C. § 18a(g)(1), the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996), 74 Fed. Reg. 857 (Jan. 9, 2009), and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 81 Fed. Reg. 42,476 (June 30, 2016);

      d.     That the Court order such other and further relief as the Court may deem just and proper; and

      e.     That the Court award Plaintiff its costs of this suit.

**FOR THE PLAINTIFF:**

Renata B. Hesse
D.C. Bar No. 466107
Acting Assistant Attorney General
Department of Justice
Antitrust Division
Washington, D.C.  20530

Daniel P. Ducore
D.C. Bar No. 933721
Special Attorney

Roberta S. Baruch
D.C. Bar No. 269266
Special Attorney

Kenneth A. Libby
Special Attorney

Jennifer Lee
Special Attorney

Federal Trade Commission
Washington, D.C. 20580
(202) 326-2694